UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL CASE NO. 5:17-cv-107

| | |
|---|---|
| STANDARD HOMES PLAN SERVICE, INC.<br>    Plaintiff,<br>v.<br>DEVAUL LANGDON;<br>DEBORAH LANGDON;<br>R.L. PROPERTIES, LLC;<br>STAPLES, INC., and<br>JOHNSTON COUNTY, *a North Carolina body politic and corporate*<br>    Defendants | **COMPLAINT** |

## NATURE OF THE ACTION

1. Plaintiff brings this action for copyright infringement in violation of the United States Copyright Act, 17 USC § 101 *et seq.*, on account of Defendants' creation of unlawful copies of Plaintiff's copyrighted home designs and plans; use of those illegal copies to seek and obtain building permits authorizing construction of infringing homes; and unlawful construction, offer for sale and sale of infringing homes.

2. With respect to Johnston County, Standard Homes seeks prospective injunctive relief and does not seek monetary damages from Johnston County, except to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and in such case, seeks monetary damages only to the extent of coverage. Accordingly, any potential defenses that might otherwise be available to Johnston County under theories of sovereign or governmental immunity are inapplicable. The remaining Defendants, having acted collectively to further the conduct described herein, are jointly and severally liable for all damages arising out of

the infringing and unlawful activities described herein; and all Defendants are subject to injunctive relief as hereinafter set out and sought.

## PARTIES

3. Plaintiff Standard Homes Plan Service, Inc. ("Standard Homes") is a North Carolina corporation with a principal place of business in Wake County, North Carolina. Since its inception in 1917, Standard Homes has established a reputation as a superior designer of home plans, selling both stock and custom home plans to the general public and to homebuilders. A family-owned business now in its fourth generation, Standard Homes' work is requested both by individuals who are considering construction of new homes for themselves and by professional builders.

4. Defendant Devaul Langdon ("Mr. Langdon") is an individual residing in this judicial district and more specifically, on information and belief, in Angier, North Carolina. Mr. Langdon builds and sells homes to consumers based on pre-designed plans, and pre-designed plans with modifications.

5. Defendant Deborah Langdon ("Mrs. Langdon") is an individual residing in this judicial district and more specifically, on information and belief, in Angier, North Carolina. Mrs. Langdon, who is married to Mr. Langdon, assisted Mr. Langdon in his work and business pertinent to the allegations of this complaint, and in the sale of the Infringing Homes hereafter described.

6. Defendant R.L. Properties, LLC ("RLP") is a North Carolina limited liability company with a principal place of business in Angier, North Carolina. Standard Homes is informed and believes that RLP does business in this district; that Mr. Langdon is a managing member and

the manager of RLP and controls its actions alone and/or in concert with his wife; and that RLP's business consists of building and selling new homes to customers based on pre-designed plans. There is such unity of interest and control between RLP and Mr. and Mrs. Langdon that they are effectively one and the same, both in general and, in particular, with respect to the transactions at issue herein.

7. Defendant Staples, Inc. ("Staples") is a Delaware corporation that is authorized to conduct business in this state under a duly issued Certificate of Authority. Critically for this action, Staples offers copying services and conducts business in this State and judicial district and committed the complained-of actions in this State and judicial district.

8. Defendant Johnston County is a North Carolina body politic and corporate, located within this judicial district.

## JURISDICTION & VENUE

9. This case arises under the laws of the United States, including without limitation the copyright laws, 17 USC § 101 *et seq.*

10. This Court has jurisdiction under 28 USC §§ 1331 and 1338.

11. Venue is proper in the Eastern District of North Carolina under 28 USC § 1391, where substantially all of the infringing activities giving rise to the claims occurred.

## FACTS

12. Standard Homes has created original plans and designs for homes known as Conner, Drake, Federal, Myron, and Robbie, and is the owner of all rights, including copyrights, therein.

13. Standard Homes has registered copyrights in each of these plans and designs with the United States Copyright Office.

14. Each of the below-listed registrations covers the plans and/or designs for one of the homes at issue. Each of the below-listed registrations is valid, in force, and owned by Standard Homes.

| NAME OF HOME | REGISTRATION NO. |
| --- | --- |
| Conner | VA0001368376 |
| Conner | VA0001368377 |
| Drake | VA0002004094 |
| Drake | VA0001963714 |
| Federal | VA0002004095 |
| Federal | VA0001963791 |
| Myron | VA0001670374 |
| Myron | VA0001669392 |
| Robbie | VA0002004092 |
| Robbie | VA0001963656 |

15. The aforesaid registered designs and/or plans for the Conner, Drake, Federal, Myron, and Robbie homes (collectively, the "Works") have been offered to the public substantially since each was created.

16. Copyright notices have appeared on and in connection with each publication of the Works.

17. Consumers have liked the Works and Standard Homes has received income from the sales of the Works.

-4-

18. Mr. Langdon, individually and on behalf of RLP, purchased thirteen sets of copies of the Works from Standard Homes, on 3/16/2007, 7/22/2009, 8/27/2009, 10/19/2009, and 2/16/2010, which authorized the construction and sale of a total of thirteen homes. These purchases did not authorize the permitting, construction, offer for sale, or sale of additional homes, nor did these purchases authorize the making of copies of the Works beyond those provided by Plaintiff.

19. Defendants infringed Standard Homes' copyrights in the Works by participating in the construction, advertising, and sale of at least eight homes more than those for which licenses had been purchased, and each of Defendants performed acts in furtherance of said collective infringements. Hereinafter, these homes constructed without the purchase of a license to do so from Standard Homes are referred to as "Infringing Homes".

20. Without license or consent of Plaintiff, Defendants copied the Works, issued and obtained building permits based on infringing copies of the Works and for homes that exceeded the number of authorized homes, and then constructed, advertised, offered for sale, and sold at least the following Infringing Homes, using infringing images, plans and drawings, all based on Plaintiff's Works:

    a. A home based on the Works was constructed at 56 Langston Ridge, Angier, NC 27501, in approximately 2009. RLP sold the home and land for $142,000.00, and the home was valued at $130,790.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Myron," and the registrations that protect the "Myron" designs and plans.

b. A home based on the Works was constructed at 148 Langston Ridge, Angier, NC 27501, in approximately 2011. RLP sold the home and land for $139,500, and the home was valued at $138,190.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Myron," and the registrations that protect the "Myron" designs and plans.

c. A home based on the Works was constructed at 239 Langston Ridge, Angier, NC 27501, in approximately 2012. RLP sold the home and land for $ $144,000.00, and the home was valued at $139,370.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Myron," and the registrations that protect the "Myron" designs and plans.

d. A home based on the Works was constructed at 57 Andorra Pl, Angier, NC 27501, in approximately 2011. RLP sold the home and land for $133,000.00, and the home was valued at $126,950.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Robbie," and the registrations that protect the "Robbie" designs and plans.

e. A home based on the Works was constructed at 69 Andorra Pl, Angier, NC 27501, in approximately 2011. RLP sold the home and land for $117,000.00, and the home was valued at $113,550.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Federal," and the registrations that protect the "Federal" designs and plans.

f. A home based on the Works was constructed at 81 Andorra Pl, Angier, NC 27501, in approximately 2011. RLP sold the home and land for $125,000.00, and the home was

valued at $116,750.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Conner," and the registrations that protect the "Conner" designs and plans.

g. A home based on the Works was constructed at 4006 Old Fairground Rd, Angier, NC 27501, in approximately 2009. RLP sold the home and land for $113,000.00, and the home was valued at $103,030.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Drake," and the registrations that protect the "Drake" designs and plans.

h. A home based on the Works was constructed at 4014 Old Fairground Rd, Angier, NC 27501, in approximately 2009. RLP sold the home and land for $113,000.00, and the home was valued at $105,440.00 according to Johnston County tax records. This home infringes Plaintiff's copyrights in the "Conner," and the registrations that protect the "Conner" designs and plans.

21. Mr. and Mrs. Langdon jointly and severally participated in the construction, offer for sale, and sale of the Infringing Homes, and caused the infringements described herein.

22. RLP and Mr. and Mrs. Langdon financially benefited from the sale of the Infringing Homes.

23. An exterior elevation view of the "Myron" design and a photograph of an Infringing Home constructed by and with the assistance of Defendants, using the Works and copies thereof without authorization, is set forth below:

| **Plaintiff's Home Design: Myron** | **Defendants' Infringing Home** |
|---|---|
|  | |

24. An exterior elevation view of the "Drake" design and a photograph of an Infringing Home constructed by and with the assistance of Defendants, using the Works and copies thereof without authorization, is set forth below:

| **Plaintiff's Home Design: Drake** | **Defendants' Infringing Home** |
|---|---|
|  | |

25. An exterior elevation view of the "Conner" design and a photograph of an Infringing Home constructed by and with the assistance of Defendants, using the Works and copies thereof without authorization, is set forth below:

| Plaintiff's Home Design: Conner | Defendants' Infringing Home |
|---|---|
|  | |

26. An exterior elevation view of the "Federal" design and a photograph of an Infringing Home constructed by and with the assistance of Defendants, using the Works and copies thereof without authorization, is set forth below:

| Plaintiff's Home Design: Federal | Defendants' Infringing Home |
|---|---|
|  | |

27. Defendants Mr. and Mrs. Langdon and RLP built their business, at least in part, using infringing copies of Standard Homes' Works, and, in concert with the other Defendants, at least enhanced the success of their business through their infringing activities.

28. Each of the Infringing Homes is an unlawful copy of, and/or a derivative work based upon, the Works.

29. The Infringing Homes were constructed using unauthorized and infringing copies of the Works.

30. Defendants' infringements, which include advertising the Infringing Homes as well as the other acts set out hereinabove, commenced in or about 2009, and continued thereafter through at least 2012, and are still continuing.

31. Standard Homes first became aware of Defendants' wrongful acts less than three years prior to the filing of this action.

32. In addition to the standard short-form copyright notice affixed to each copy of the Works, Standard Homes affixes specific notices that highlight its copyright ownership, that forbid copying, and that forbid use of illegal copies. When Standard Homes receives an order for plans or drawings, Standard Homes prominently affixes a stamp containing its warnings on the plans and/or designs, in red ink, before providing them to a customer.

33. One of Standard Homes' notices is as follows:

> **Copyright Standard Homes Plan Services, Inc**.
>
> This house plan and accompanying sets are sold for the construction of one house only. If this stamp does not appear in red, the plan has been illegally reproduced and is in violation of copyright.

34. An example of the red stamp prominently affixed by Standard Homes to copies of the Works before providing the copies to a customer is set out below:



35. The thirteen sets of copies of the Works purchased by RLP and Mr. Langdon from Plaintiff as described above bore Plaintiff's stamp prominently affixed thereto in red ink.

36. Copies of the Works were taken by or on behalf of RLP and Mrs. and Mrs. Langdon to Defendant Staples.

37. Even though the Works had copyright notices, and even though the Works had a stamp that clearly gave notice to all who received or viewed the Works, stating that reproduction of the Works was prohibited and that any copy of the Works lacking the red stamp was and would be illegal, the plans were nonetheless copied by Staples.

38. Each infringing copy created by Staples bore Plaintiff's stamp in black, not red. An example of one of these copies made by Defendant Staples is shown below:



39. Each infringing copy created by Staples proudly bore advertising of that infringer's copy shop. A close-up view of Staples' self-identification on the binding of the above infringing copy is set out below:



40. By facilitating and participating in the creation of infringing copies of the Works, Staples directly infringed Plaintiff's copyrights, and enabled, contributed to, and vicariously participated in the infringements of Plaintiff's copyrights in the Works by the remaining Defendants.

41. Staples benefited from the payment it received for its unlawful copying, and from the advertising of its copy and print centers that it posted on each infringing copy, thereby effectively advertising to other would-be infringers its availability to make unlawful copies.

42. On information and belief, Defendant Staples copied plans or drawings used to carry out all infringements described herein, making unlawful and infringing copies of the Works in violation of express notice not to do so and entirely without license or consent from Plaintiff.

43. Infringing copies of the Works were taken by or on behalf of RLP and Mr. and Mrs. Langdon to the Johnston County Planning Department, a department of Defendant Johnston County. These infringing copies were presented to the Johnston County Planning Department in order to seek and to secure permits authorizing construction of Infringing Homes.

44. Even though the Works had copyright notices, and even though the Works had a stamp that clearly gave notice to all who received or viewed the Works, stating that any copy of the Works lacking the red stamp was and would be illegal, and even though the stamp expressly stated that "if this stamp is not in red ink, no permit should be issued," Johnston County nonetheless received the infringing copies of Plaintiff's Works bearing Plaintiff's notice in black rather than red, used the infringing copies of Plaintiff's Works, and issued permits for the construction of unlawful Infringing Homes based on the infringing copies of Plaintiff's Works that it had reviewed.

45. Immediately adjacent to the black-printed notice advising Johnston County that the copy was illegal and that the copy should not be used to issue a permit, Johnston County affixed its own red stamp, bearing the signature of its own inspectors. An example of Johnston County's use of an illegal copy of the Works is set out below.



46. By using infringing copies of the Works to authorize construction of Infringing Homes, Johnston County at least contributed to and vicariously participated in the ensuing infringements of Plaintiff's copyrights in the Works. By authorizing and requiring the public display of infringing copies of the Works on the jobsite, Johnston County directly or contributorily infringed Plaintiff's copyrights in the Works.

47. Johnston County was paid for its use of the plans to issue permits for the construction of unlawful Infringing Homes based on the infringing copies it had reviewed; and Johnston County also was paid and will in the future be paid taxes on each sale of an Infringing Home located in Johnston County; and Johnson County was paid, and will in the future be paid, taxes based on the value of the Infringing Home—values that are based at least in substantial part on use of Plaintiff's copyrighted Works to build the homes, and on the Works and derivatives thereof that are embodied in the constructed Infringing Homes.

48. The above-described actions of each of Defendants were willful, and in violation of express notices of Plaintiff's rights, and warnings not to infringe those rights, that were provided to said Defendants.

49. Each allegation of every paragraph of this complaint is hereby incorporated into each claim and cause of action set out in this complaint as though fully set out therein.

## CAUSE OF ACTION:

## COPYRIGHT INFRINGEMENT

50. The acts of Defendants described hereinabove constitute direct, contributory, and/or vicarious infringement of Plaintiff's copyrights in the Works.

51. Each of Defendants copied or contributed to the unlawful copying of the Works, and to the creation of unlawful copies and derivative works in the form of Infringing Homes. Each of Defendants participated—whether directly or contributorily or vicariously—in the construction, offer for sale, and sale of Infringing Homes.

52. Defendants' unlawful acts have been performed without the consent of Standard Homes. To the extent that one or more Defendants have made any further copies (including derivative works) of the Works, such actions have been taken without consent of Standard Homes and also constitute infringement.

53. Upon information and belief, Defendants have contributed to infringement by others, including real estate agents, whom they have allowed and enabled to directly infringe the Works, including through copying and publishing of the Works and making derivative works through posting online and in other mediums photographs of the Works and derivative works

thereof. Defendants have had a financial interest in the exploitation of the Works by such third parties.

54. Defendants knew or should have known at all times pertinent hereto that the Works were not their own works and that they had no permission to undertake the unlawful activities described herein.

55. Each of Defendants RLP and Mr. and Mrs. Langdon were expressly requested by Standard Homes to cease their unlawful infringements. However, said Defendants have refused to cease or desist, have refused to account for past infringement, and continued the unlawful infringements set forth herein.

56. Defendants' willful infringements are in violation of the copyright laws of the United States, and Standard Homes has been damaged by these infringements.

57. Defendants' aforesaid wrongful acts have resulted in the accumulation of savings and profits to Defendants, Defendants' customers, and those acting in concert with Defendants to which they were not entitled, and have resulted in lost profits and/or other damage to Standard Homes, the extent of which is not yet fully known.

58. All parties have in one way or another violated the intellectual and common law property interests of Standard Homes. *Inter alia,* Staples illegally enabled, assisted, and contributed to the infringements by RLP and Mr. and Mrs. Langdon, in addition to directly infringing the Works by making copies of the same, despite the copyright notices and the red seal warning. RLP, Mr. and Mrs. Langdon made illegal copies of the Works, made derivative copies of the Works, and built, advertised, and sold Infringing Homes. Johnston County used the infringing copies of Plaintiff's Works, and issued permits for the construction of unlawful Infringing Homes

based on the infringing copies of Plaintiff's Works that it had reviewed, thereby inviting the unlawful copying of the Works at Staples, and enabling all infringements.

59. Based upon Plaintiff's investigation and on information and belief, and as illustrated by the facts set out herein, the misconducts of Staples and Johnston County are systemic and ongoing, and will not cease in the absence of injunctive relief.

60. Likewise, the refusal of Defendants RLP and Mr. and Mrs. Langdon to cease, desist and remedy their infringements demonstrates the need for injunctive relief.

61. Defendants' infringing acts have caused and continue to cause irreparable harm to Plaintiff.

62. There is no adequate remedy at law for the harm caused by these infringements, and Standard Homes is entitled to equitable relief in the form of an injunction against continued infringements—including not only direct infringements but also contributory and vicarious infringements—by Defendants; the officers, agents, and employees of Defendants; and all others acting in association or concert with Defendants.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that judgment be entered in its favor finding that each of Defendants has willfully infringed Plaintiff's copyrights in the Works, and ordering:

    a.    That Defendants; the officers, employees, and agents of Defendants; and all those acting in association or concert with them be enjoined, preliminarily and permanently, from all infringement of copyrights owned by Standard Homes;

b. That Defendant Johnston County be required to implement policies and procedures to avoid the acceptance of infringing plan copies for use in building permit review;

c. That all copies and derivative works made or used in violation of Standard Homes' rights, and all other articles by means of which unlawful copies or derivative works of Standard Homes' Works were made be seized, impounded, and destroyed pursuant to 17 USC § 503;

d. That Defendants jointly and severally pay to Standard Homes all actual damages that have been suffered by Plaintiff Standard Homes on account of Defendants' actions complained of herein, the amount of which cannot presently be ascertained—provided, however, that Johnston County be required to make such payment only to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and only to the extent of such coverage.

e. That Defendants jointly and severally account for and pay over to Standard Homes all additional profits, including savings from not having purchased licenses to use the Works, earned by Defendants through their infringing use of Standard Homes' Works—provided, however, that Johnston County be required to make such payment only to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and only to the extent of such coverage;

f.  That Defendants jointly and severally account for and pay over to Standard Homes all additional profits including savings from not having purchased licenses to use the Works, earned by real estate agents, advertisers, and other persons or entities to whose infringements Defendants have contributed—provided, however, that Johnston County be required to make such payment only to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and only to the extent of such coverage;

g.  That all these sums be trebled on account of the willful nature of Defendants' conduct, and/or that Standard Homes be awarded punitive damages on account thereof—provided, however, that Johnston County be required to make such payment only to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and only to the extent of such coverage;

h.  That, if Standard Homes elects such alternative damages at any time before final judgment is rendered, Standard Homes be awarded statutory damages pursuant to 17 USC § 504(c) in lieu of the actual damages and profits for some or all of the copyright infringements complained of herein for which statutory damages are available—provided, however, that Johnston County be required to make such payment only to the extent (if any) that Johnston County has waived governmental immunity by the purchase of liability insurance or equivalent as permitted by N.C. Gen. Stat. § 153A-435, and only to the extent of such coverage;

i.  That Standard Homes be awarded its costs and attorneys' fees; and

j.  That Standard Homes have and recover all such other and further relief as may be proper and lawful, including but not limited to appropriate interest.

Respectfully submitted this the 28th day of February 2017.

        **OLIVE & OLIVE, P.A.**
        Attorneys for Plaintiff

        /s/ Susan Freya Olive
        **Susan Freya Olive**
            NC State Bar No. 7252
        **David Loar McKenzie**
            NC State Bar No. 36376
        500 Memorial Street
        Durham, North Carolina 27701
        Phone: 919-683-5514
        Email: emailboxEDNC@oliveandolive.com